IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EARL E. SEGERDAHL, )
)
        Plaintiff, )
)
vs. ) No. 05 C 4690
)
THE SEGERDAHL CORP. )
EMPLOYEE STOCK OWNERSHIP )
PLAN, )
)
        Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Earl Segerdahl brought an action alleging violation of the Employee Retirement Income Security Act of 1974 (ERISA) against defendant The Segerdahl Corporation Employee Stock Ownership Plan (ESOP). Defendant moves for summary judgment based on plaintiff's alleged failure to exhaust his administrative remedies and failure to timely file his complaint. For the following reasons, we grant defendant's motion for summary judgment and dismiss plaintiff's complaint with prejudice.

## BACKGROUND

Under FED. R. CIV. P. 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also* Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Ass'n of Indianapolis, 806 F.2d 146, 149 (7th Cir.1986). The moving party has the burden to establish the lack of a genuine issue of material fact. *Id.* Upon meeting that burden, the non-moving party must set forth specific facts that demonstrate the existence of a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir.1983). The mere existence of some factual dispute will not frustrate an otherwise proper summary

judgment motion; only a genuine dispute over a material fact will defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986).

The following factual background is based on the statements submitted by the parties pursuant to Local Rule 56, and for purposes of the summary judgment motion we construe the facts in plaintiff's favor. *See* Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Bledsoe v. City of Chicago, 1996 WL 406647, *2 (N.D.Ill.1996) (stating that only reasonable inferences, not all conceivable inferences, will be drawn in favor of non-moving party). Here, with the exception of minor disputes, the parties agree to the basic facts underlying this case.

Plaintiff is a former majority shareholder and chief executive officer of The Segerdahl Corporation. The Segerdahl Corporation, in an effort to enable eligible employees to acquire stock ownership in the company by investing in the company stock, established the ESOP, effective on January 1, 2003. The terms of the ESOP are governed by ERISA, and the regulations promulgated under that statute.

This dispute, over the value of plaintiff's ESOP account, arises from the following chronology:

> 1. On December 19, 2003, plaintiff resigns and converts his stock interests to the ESOP.
> 2. On January 22, 2004, plaintiff elects to take a distribution of his entire ESOP account.
> 3. On February 6, 2004, defendant distributes $414,714.14 to plaintiff as the proceeds for his stock, valued at $162.50 per share.
> 4. On April 8, 2004, defendant's stock was valued at over $300 per share as of December 31, 2003.

Plaintiff seeks to be paid at the level of the April 8, 2004, valuation. Defendant has consistently maintained that the valuation in effect at the time of the distribution controls and that valuation is $162.50 per share.

After learning of the April valuation, in September 2004, plaintiff authorized his legal

representative, Victor Kostro, to request a copy of his ESOP statement, reflecting the status of his ESOP participation as of December 31, 2003. Through a series of communications – primarily between Kostro and Gary Gardner, vice-president and chief financial officer of The Segerdahl Corporation – the parties discussed plaintiff's ESOP participation dates and plaintiff's contention that his ESOP funds were undervalued. Because the communications become important in determining the procedural disputes at issue, we set them out here, briefly noting the important language in each communication.

> (1) September 24, 2004, letter from Kostro to Marilyn Marchetti, Senior Vice President of GreatBanc Trust Company, trustee of Segerdahl ESOP: "We have been retained to provide Mr. Segerdahl with certain tax planning and tax advice and have discovered that our client did not receive a statement for the period ending December 31, 2003, reflecting his balance as a participant in the ESOP. Kindly forward to the undersigned, at your earliest convenience, a true and correct copy of the original statement."
>
> (2) October 4, 2004, letter from Gardner to Kostro: "Our ESOP participants' year end statements were not prepared until April of this year after we received a new stock valuation from our financial advisor. We did not send Earl Segerdahl a statement since he sold his shares to the company shortly after year end at the then prevailing stock price, and therefore was not a member of the ESOP when the statements were distributed."
>
> (3) October 7, 2004, letter from Kostro to Gardner, indicating concern that plaintiff was not considered a member of the ESOP, and noting: "It would be inconsistent for the company to unilaterally treat our client differently than all other employees who received statements. ... I would ask that you reconsider the company's position as to whether or not Earl Segerdahl was a member of the ESOP on December 31, 2003 ... and advise us if a statement will be forthcoming. If a statement is not forthcoming, we would request a detailed explanation as to the disparate treatment accorded our client, as well as a full copy of the Employee Stock Option Plan so that we might review all pertinent provisions."
>
> (4) October 14, 2004, letter from Gardner to Kostro, attaching plaintiff's 2003 year-end ESOP statement. The letter explained "the distribution procedures [are] governed by the terms of the plan document, a distribution policy, and a side letter between the Company and the trustee of the ESOP. ... I trust that this discussion clarifies the background of Earl Segerdahl's distribution."
>
> (5) October 28, 2004, letter from Kostro to Gardner, noting that they had not received the requested copy of the ESOP plan, and stating that the company had

not yet advised plaintiff if they had "reconsidered the company's position as to whether or not Earl Segerdahl was a member of the ESOP as of December 31, 2003." The letter continues, "Our client remains committed to pursuing this matter to a satisfactory conclusion and has requested that we advise you that if these issues cannot be resolved amicably, he intends to protect his interest in an appropriate civil forum."

(6) November 10, 2004, letter from Kostro to Marchetti, explaining plaintiff's position as to why his ESOP benefits should have translated into $920,000, rather than the $414,714.14 he received. "Please consider this our final attempt to amicably resolve this matter. Unless our client receives a check in an amount representing the difference in his ESOP balance at year end less the amount previously paid in February, 2004, plus an amount to compensate him for income taxes incurred, we shall be forced to initiate litigation to resolve these issues. ..."

(7) November 10, 2004, letter from Kostro to Gardner, advising Gardner that plaintiff had serious concerns about the buyout of his stock interest. The letter requests "the valuation report of July 31, 2003, the valuation report of December 31, 2003, and the monthly financial statements for the company for the entire year. Additionally, our client has instructed this firm to immediately initiate legal proceedings if the information is not provided in a timely manner."

(8) November 18, 2004, letter from Gardner to Kostro. "Since the November 10 letter sent on Mr. Segerdahl's behalf challenges Mr. Segerdahl's benefits under the Plan, we must consider it a claim for benefits under the Plan. The claim will be reviewed as required under the terms of the Plan and...ERISA. The Segerdahl ESOP Committee ... has the discretionary authority to decide claims for benefits under the Plan. ... Section 503 of ERISA and the Plan's governing document give the Committee 90 days from receipt of a claim letter to respond to the claim in writing ...."

(9) November 30, 2004, letter from Kostro to Gardner, regarding plaintiff's October 7 request for a copy of the plan documents.

(10) December 9, 2004, letter from Gardner to Kostro, enclosing the ESOP plan, summary plan description, and ESOP distribution policy.

(11) December 10, 2004, letter from Kostro to Gardner: "[W]e continue to dispute the valuation of Earl Segerdahl's ESOP as set forth in the statement provided dated December 31, 2003. ... If our client's claim for benefits is denied, we have been instructed to challenge the ESOP's position as a violation of ERISA, as our client has been adversely affected by a discriminatory practice and a breach of fiduciary duties."

(12) February 4, 2005, letter from Gardner to Kostro, stating that the Committee needed an additional 60 days to review his claim.

(13) February 7, 2005, letter from Kostro to Gardner, stating that the time extension was unreasonable, and "[a]s such, we believe your actions effectively serve to ignore his claim."

(14) February 10, 2005, letter from Gardner to Kostro, further explaining the need for additional time to decide plaintiff's claim.

(15) May 9, 2005, letter from Gardner to Kostro, denying plaintiff's claim for benefits and explaining the process and plaintiff's appeal rights. "Under ERISA and the ESOP's governing document, Mr. Segerdahl or you, as his authorized representative, have the right to request a review of the denial of his claim herein and present additional written comments with respect to his claim. If Mr. Segerdahl desires to request a review, he or you should submit a request for review in writing to the ESOP Committee within sixty days after receipt of this letter. ... Included with any request should be any additional information that Mr. Segerdahl or you believe entitles him to a review of the claim."

That brings us to the dispute between the parties. Plaintiff's February 2004 ESOP distribution was calculated according to the most recently completed stock appraisal of the corporation from December 18, 2003, which determined a value of the stock at $162.50 per share. Because the ESOP's trustee engaged its financial advisor to complete a new valuation of the stock on December 31, 2003, and plaintiff did not request his distribution until almost a month later, plaintiff contends that he was entitled to the new stock valuation of approximately $320 per share.[1] Defendant argues that the 2003 end-of-the-year stock valuation was not completed until April 2004, three months after plaintiff requested full distribution of his ESOP account. Therefore, defendant contends, valuing plaintiff's stock at $162.50 per share, the most recently completed valuation, was proper and was not a violation of ERISA. This case centers on two factual disputes: (1) whether plaintiff was a participant in the ESOP after December 19, 2003, and (2) if he was a participant through January 2004, whether his distribution should have been based on the 2003 year-end stock valuation, completed in April 2004.

---

[1] Plaintiff's complaint states that on April 8, 2004 the shares were valued at an amount of $320 per share. Defendant states that on that date the shares were valued at $366.80 per share.

Defendant has moved for summary judgment based not on the merits of the case, but on two procedural issues: exhaustion of administrative remedies, and timeliness. Because those procedural issues do not turn on the disputed facts, the factual disagreements do not bar this court from deciding the case on a motion for summary judgment.

## DISCUSSION

Defendant argues that plaintiff's claim must be dismissed because he failed to exhaust his administrative remedies. Plaintiff disputes defendant's contention, arguing that he did in fact exhaust his administrative remedies. Alternatively, plaintiff argues that he should not be required to exhaust his administrative remedies because he was denied a full and fair review of his claim and further appeals of his claim would be futile. Defendant also argues that plaintiff's complaint must be dismissed because it was not filed within 90 days of the adverse benefits decision, as required under the ESOP. In response, plaintiff argues that defendant should be estopped from pleading untimeliness because the May 9, 2005, denial was not a final judgment. In the alternative, plaintiff asks this court to deem the statute of limitations provision patently unreasonable.

### Exhaustion

Although the ERISA statute does not explicitly require exhaustion, the Seventh Circuit has repeatedly held that a district court can require an ERISA plaintiff to exhaust his internal administrative remedies as a prerequisite to filing suit in federal court. Zhou v. Guardian Life Insurance Co. of America, 295 F.3d 677, 679 (7th Cir.2002); Doe v. Blue Cross & Blue Shield United of Wisconsin, 112 F.3d 869, 873 (7th Cir.1997); Powell v. A.T.&T. Communications, Inc., 938 F.2d 823, 825 (7th Cir.1991). *See also* Bingham v. CNA Financial Corp., 2004 WL 2390093, *2 (N.D.Ill.2004); Potter v. ICI Americas, Inc., 103 F.Supp.2d 1062, 1065 (S.D.Ind.1999). The exhaustion requirement encourages the private resolution of ERISA-

related disputes, reduces the number of frivolous lawsuits and allows for the preparation of a more complete factual record. *See* Powell, 938 F.2d at 826; Gallegos v. Mt. Sinai Medical Center, 210 F.3d 803, 807-08 (7th Cir.2000).

The parties' first dispute is whether plaintiff actually exhausted his administrative remedies. While plaintiff contends that Kostro's letters to Marchetti and Gardner included an initial claim and two appeals, defendant argues that the initial letters were simply requests for information and plaintiff failed to appeal the denial of his initial claim.

Specifically, plaintiff argues that Kostro's letter of September 24, 2004, served as an initial claim because it was met with an "adverse benefit determination" in the form of Gardner's October 4, 2004, response (plf's response at 3). Plaintiff deems the October 4 letter, indicating that the company did not consider plaintiff a member of the ESOP, a "preemptive strike," which "convey[ed] the Plan Committee's determination that Mr. Segerdahl had already received all of the Plan benefits to which he was entitled" (*id.*). After the initial adverse determination on October 4, 2004, plaintiff contends that he appealed the committee's decision through Kostro's October 7, 2004, letter to Gardner, because that correspondence "appealed the Plan's decision to deny his request to have his ESOP shares valued in the same way as other ESOP participants" (*id.*, at 4). Plaintiff states that Gardner's October 14, 2004, response constituted a denial of plaintiff's appeal. Finally, plaintiff indicates that Kostro's letters of October 28, 2004, and November 10, 2004, together constituted his second and final appeal to the administrative committee. That appeal was denied on May 9, 2005.

Defendant views the initial communication from Kostro – including the September 24, October 4, and October 28, 2004, letters – to be requests for information and not initiation of a formal claim petition. Rather, defendant argues that Kostro's letter of November 10, 2004, was the first time plaintiff challenged his ESOP benefits, and therefore, the initiation of a

formal claim. In fact, in defendant's reply to Kostro's November 10, 2004, letter, Gardner stated: "Since the November 10 letter sent on Mr. Segerdahl's behalf challenges Mr. Segerdahl's benefits under the Plan, we must consider it a claim for benefits under the Plan. The claim will be reviewed as required under the terms of the Plan and...ERISA." Defendant further argues that when that claim was denied on May 9, 2005, plaintiff had 60 days to appeal the decision to the administrative committee. Because plaintiff had no further communication with the administrative committee, defendant contends that plaintiff failed to exhaust his administrative remedies, and cannot now bring suit in federal court. We agree with defendant that plaintiff did not exhaust his administrative remedies.

In Powell, 938 F.2d 823, the Seventh Circuit addressed the question of whether a letter sent from plaintiff's counsel was sufficient to initiate administrative resolution of an ERISA claim, so as to preclude summary judgment on the basis of exhaustion. In that case plaintiff's counsel wrote to defendant after plaintiff was fired regarding "the legality of [plaintiff's] termination after seventeen years of employment, the status of his pension, and the availability of any other forms of disability benefits." *Id.*, at 825. The letter also requested copies of the pension and disability plans, and the status of plaintiff's pension. It stated, "[w]e are currently researching Mr. Powell's potential legal rights in this matter including but not limited to, claims under ERISA, Illinois Workman's Compensation Act, Illinois Human Rights Act, and the Social Security Act." *Id.* The court in Powell held that plaintiff's attorney's letter was "not an attempt to jump start administrative proceedings, but a threat to take AT&T to court if the matter was not settled." *Id.*, at 827. As the letter was insufficient to initiate an administrative review of plaintiff's ERISA claims, the court held that plaintiff's "rear-guard attempt to turn a request for information and threat to sue into a demand for administrative review must be rejected." *Id.*

In its analysis in Powell, the Seventh Circuit defined the requirements for initiation of an ERISA administrative review. The court stated: "An attorney's letter can be sufficient to initiate administrative review if a reasonable procedure for filing claims has not been established .... The content of the letter must be reasonably calculated to alert the employer to the nature of the claim and request administrative review." *Id.* Since Powell, courts in this circuit have continuously held ERISA beneficiaries to those standards. *See* Jones v. State Wide Aluminum, Inc., 246 F.Supp.2d 1018, 1026 (N.D.Ind.2003) (finding plaintiff's representative's letters were not appeals because the letters were not "'reasonably calculated to alert the employer to the nature of the claim and request administrative review'"); Potter, 103 F.Supp.2d at 1067 (rejecting plaintiff's claim that his attorney's letter initiated administrative review proceedings where the letter both requested benefits to which plaintiff may have been entitled and threatened legal action against defendant); Nilles v. Sears, Roebuck & Co., 1997 WL 610339, *4 (N.D.Ill.1997) ("A mere request for information, even if written, is usually not sufficient to commence administrative review"); Duffin v. Federal Exp. Corp., 1997 WL 208428, *2 (N.D.Ill.1997) (using the reasoning in Powell to hold that a letter providing information to the appeals committee was insufficient to demand administrative review).

First, we note that neither the text of the ESOP nor the summary plan description established guidelines for filing a formal procedure for administrative review of benefits. The plan itself does not mention a claims procedure. And while the summary plan description does describe the procedure the committee will follow once a claim has been filed, it does not define the process by which a beneficiary should file a claim for benefits with the committee. Thus, plaintiff's attorney's letter may have been sufficient to initiate a claims procedure for benefits

under the Segerdahl ESOP,[2] if it was reasonably calculated to alert the employer to the nature of the claim and request administrative review. This is where plaintiff's argument breaks down.

Kostro's initial letter of September 24, 2004, can in no way be seen as stating a claim for benefits under the ESOP. The letter states: "We have been retained to provide Mr. Segerdahl with certain tax planning and tax advice and have discovered that our client did not receive a statement for the period ending December 31, 2003, reflecting his balance as a participant in the ESOP. Kindly forward to the undersigned, at your earliest convenience, a true and correct copy of the original statement." This is clearly a request for information and not a request for administrative review.

Because plaintiff claims that he twice appealed the benefits determination, we will consider whether Kostro's second letter of October 7, 2004, expressing concern as to the ESOP's determination that plaintiff was not a member at the time of the 2003 statement distribution, was sufficient to initiate an administrative review of plaintiff's ESOP claim. Although the letter does state concern that plaintiff was treated unfairly, the letter's main thrust was plaintiff's entitlement "to a statement concerning his participation as of December 31st." Even Kostro's request that the ESOP "reconsider the company's position" as to plaintiff's participation in the ESOP was made to induce Gardner to provide plaintiff with a statement of his ESOP benefits. We read this letter as a request for information – information that was sent in Gardner's subsequent response. And even though Gardner responded with a two-page description of the ESOP distribution rules, we cannot find that Kostro's letter was in fact a request for administrative review of plaintiff's ESOP benefits.

---

[2] Contrary to defendant's contention (def's 56.1 statement of facts, at ¶ 9), plaintiff argues that he did not receive a copy of the summary plan description for the ESOP at the time the plan was adopted (decl. of plf, at ¶ 4). We need not resolve this factual dispute, however, because the summary plan document did not contain details of the means by which a beneficiary should initiate a claim review.

We agree with defendant that Kostro's letter of November 10, 2004, was the first communication that could be considered initiation of an administrative benefits review. In that letter Kostro not only again requested copies of the ESOP, but also explained plaintiff's position as to why his ESOP benefits should have translated into $920,000, rather than the $414,714.14 he received. And although Kostro did request information and threaten legal action, the letter differed from the one discussed in Powell because it also addressed the specific contention plaintiff had with his ESOP benefits. *See* Rivera v. Network Health Plan of Wisconsin, Inc., 2003 WL 22794439, *11 (E.D.Wis.2003) (denying motion to dismiss based on failure to exhaust administrative remedies because "Rivera's case is different from Powell, in which an attorney's letter was found insufficient to initiate administrative review. As stated by the Powell court, Powell's attorney's letter was a threat to sue and requested general information on benefit plans. Here, counsel focused on the denial of coverage"). Because plaintiff did not appeal the May 9, 2005, denial (which was a response to the November 10, 2004, claim), we find that plaintiff has not exhausted his administrative remedies.

Alternatively, plaintiff argues that he should be excused from the exhaustion requirement. The Seventh Circuit has articulated two exceptions to the exhaustion requirement: "(1)[W]here there has been a lack of meaningful access to the review procedures; and (2) where exhaustion of internal remedies would be futile." Wilczynski v. Lumbermens Mut. Cas. Co., 93 F.3d 397, 402 (7th Cir.1996). *See also* Smith v. Blue Cross & Blue Shield United of Wisconsin, 959 F.2d 655, 658-59 (7th Cir.1992); Potter, 103 F.Supp.2d at 1066. Plaintiff argues that both apply in his case.

Plaintiff argues that he was denied meaningful access to the review procedures because he was not given an opportunity to review pertinent documents, was never provided with a

copy of the ESOP distribution policy or the side letter[3], he was not given a description of any additional material or information necessary to perfect his appeal in violation of 29 CFR 2560.503(g)(iii), and although he made claims prior to November 10, 2004, they were not submitted to the administrative committee for review.

Much of plaintiff's access arguments presume that he initiated an administrative claim prior to November 10, 2004. He argues that Gardner's letters of October 4, October 14, and November 18, 2004, repeatedly denied his claim, without identifying the ESOP provisions supporting the denial, identifying the evidence on which it was based, or submitting it to the administrative committee for review. As we have already decided that plaintiff did not initiate a claim until November 10, 2004, the communications prior to that date, and the informative reply to the initial claim explaining the review process on November 18, 2004, were not subject to ERISA requirements. The regulation on which plaintiff relies – 29 CFR § 2560.503-1 – sets forth the "minimum requirements for employee benefit plan procedures pertaining to claims for benefits..." 29 CFR § 2560.503-1(a). Therefore, it does not apply to pre-claim correspondence.

Plaintiff relies on <u>Wilczynski v. Lumbermens Mut. Cas. Co.</u>, 93 F.3d 397 (7th Cir.1996) to argue that he was denied a meaningful review because defendant did not forward him the plan documents until December 9, 2004, after he had already submitted his initial claim. In <u>Wilczynski</u>, the court stated, "[w]e have interpreted the requirement of 'full and fair review' to mean that a benefit plan must provide claimants with access to 'the evidence the decisionmaker relied upon' in denying their claim." *Id.*, at 402. Although we agree that it was

---

[3] Plaintiff's brief suggests that he never received a copy of the distribution plan or the side letter. In his declaration, however, plaintiff swears that on December 9, 2004, Mr. Gardner did provide him with a copy of the governing ESOP documents (Decl. of plf., at ¶ 16) (referring to exhibit I, in which Mr. Gardner enclosed (1) the plan; (2) the summary plan description; and (3) the ESOP distribution policy). Therefore, we will not address that argument any further.

unnecessary to wait the full statutory period to send plaintiff copies of the plan documents, we read Wilczynski as stating that a beneficiary must be afforded an opportunity to review the pertinent documents used in determination of the initial denial so that beneficiary can develop his appeal. In this case, plaintiff received the documents after his initial claim, but prior to the adverse determination. Therefore, had he chosen to appeal the decision he would have had the pertinent documents upon which the committee made its initial adverse decision. Additionally, this case differs from Wilczynski, which was an order on a motion to dismiss, as plaintiff must more clearly show a lack of meaningful review in responding to a motion for summary judgment. Plaintiff has failed to do that.

Plaintiff also claims that defendant violated 29 CFR 3560.503(g)(iii) because the May 9, 2005, denial did not give a description of any additional material or information necessary for plaintiff to perfect his claim, or any explanation of why that material would be necessary. Plaintiff argues, "... the administrator presented bare conclusions with no rationale and no citation to the evidence." With regard to such ERISA regulations, the Seventh Circuit has held that "substantial compliance" with the regulations is sufficient. Schneider v. Sentry Group Long Term Disability Plan, 422 F.3d 621, 627 (7th Cir.2005). In determining substantial compliance with 29 CFR § 2560.503, the court asked: "'[W]as the beneficiary supplied with a statement of reasons that, under the circumstances of the case, permitted a sufficiently clear understanding of the administrator's position to permit effective review?'" *Id.*, at 628 (*citing* Halpin v. W.W. Grainger, Inc., 962 F.2d 685, 690)).

Plaintiff contends that the facts of his case parallel those in Halpin, such that neither plaintiff nor this court could have a "sufficiently precise understanding" of the plan's denial of plaintiff's claim. We disagree. In Halpin, the plaintiff was denied long-term disability benefits based on the administrator's finding that he no longer satisfied the total disability

provisions of the plan. In the appeal, the administrative committee assessed competing medical evaluations from their physician and plaintiff's physician. The court held that the appeal process was stunted from the start because the committee had not told plaintiff that further medical evidence in support of his total disability should have been submitted in order to perfect his claim on appeal. The case at hand differs from a disability case like Halpin because plaintiff's right to the benefits does not turn on a subjective review of plaintiff's medical condition. Rather, it turns on the means by which the ESOP benefits were distributed, set forth in the distribution policy, provided to plaintiff on December 9, 2004. The May 9, 2005, denial letter clearly states, "The Distribution Policy in effect for Mr. Segerdahl's distribution provided that the stock price used for a distribution should be the price established by the most recently completed valuation. When Mr. Segerdahl requested a distribution on January 22, 2004, the most recent available valuation was completed on December 18, 2003..." (Decl. of plf, ex. N). Therefore, it is clear to this court, and should be clear to plaintiff, why his claim was denied. And although defendant did not specifically state the material plaintiff should include to perfect his appeal, the letter did address the reason why the claim was denied, pointed to the distribution policy as the governing ESOP document, and informed plaintiff of his appeal rights. Such substantial compliance with ERISA regulations is sufficient. Halpin, 962 F.2d at 690. Thus, we find that defendant sufficiently complied with the ERISA regulations and plaintiff was afforded meaningful access to a full and fair review.

Plaintiff also argues that he should be exempted from the exhaustion requirement because an appeal to the ESOP committee would be futile. For plaintiff to succeed on a futility argument, he must show that it is certain that his claim will be denied by the plan administrator. Ruttenberg v. U.S. Life Ins. Co. in City of New York, 413 F.3d 652, 662 (7th Cir.2005). A mere doubt that an appeal will result in a different decision is insufficient to

succeed on a futility argument. Zhou, 295 F.3d at 680.

Plaintiff contends that an appeal would be futile because "[o]n at least three separate occasions over the course of eight months, Mr. Segerdahl was informed by the same Plan Committee member, Mr. Gardner, that he was not entitled to benefits based on the December 31, 2003 Plan valuation. The justification for this determination changed little from the first denial to the last... At each level of review Mr. Gardner's denial of Mr. Segerdahl's claim constituted a final decision, and further appeals to Mr. Gardner would be futile."

Plaintiff once again refers to communications prior to November 10, 2004, as claims for benefits, rather than requests for information. In regards to futility, however, his argument is more compelling. Although we do not consider the initial communications to initiate a claims proceeding, the responses from Gardner do indicate that he held a firm position as to the proposed adjustment to plaintiff's ESOP benefits. It is not enough, however, for us to find that an administrative appeal would be futile.

Plaintiff's futility claim fails because Gardner is not the sole member of the administrative committee, the group that would be making any decision on plaintiff's appeal. The ESOP committee includes three other current employees and one non-employee director. (def's 56.1 stmt. of facts, ex. A, ¶ 2). Therefore, even if Gardner had already made up his mind as to plaintiff's claim, he is not necessarily the decisive vote on the committee.

Plaintiff's reliance on Carter v. Signode Industries, Inc., 688 F.Supp.1283 (N.D.Ill.1988) is insufficient. In Carter, the court held that plaintiffs' failure to exhaust their administrative remedies was not fatal to their ERISA causes of action because any attempt to exhaust would be futile. The court's finding hinged on the categorical administrative denials of two other beneficiaries in the same position as plaintiffs and the defendants' expressed intentions to "ignore and stifle any further attempts...to seek reappraisal of Signode stock and an

adjustment of pension benefits." 688 F.Supp. at 1287 (N.D.Ill.1988). In this case, unlike in Carter, plaintiff can neither point to another beneficiary who has gone through the appeal process to no avail, nor point to any committee member's explicit refusal to consider new evidence or arguments. Therefore, because plaintiff has not shown certain failure in an administrative review, we cannot find that exhaustion would be futile. We grant defendant's summary judgment motion, based on plaintiff's failure to exhaust his administrative remedies.

Having concluded that plaintiff failed to exhaust his administrative remedies, we nonetheless recognize that plaintiff may possibly be excused because he believed he had done so. The realities are readily apparent. Plaintiff was aware of a substantial difference between the amount he was paid and the April 2004, valuation. As prior chief executive officer and majority stockholder he owned a large block of the ESOP stock. As soon as plaintiff initiated inquiries it had to be obvious to defendant that plaintiff hoped to benefit from the higher valuation. While his earlier communications were couched more in terms of seeking information than stating a claim, the absence of magic language did not obscure the fact, for defendant, that plaintiff wanted more money. Defendant's responses were carefully drafted to preserve the information-claim distinction, but without expressly advising plaintiff of what it was doing or why.

We are troubled by that. Should not a fiduciary deal with a beneficiary in a less adversary manner? But, unfortunately for plaintiff, if he prevails on his argument that his inquiries in October and his claim in November were, in substance, a claim and two appeals, then his limitation argument regarding this case must fail. If we assume that the May 5, 2005, denial was a response to plaintiff's second appeal, then there can be no contention that plaintiff was entitled to wait 60 days before the 90-day limitations period began to run. Plaintiff concedes that he had copies of the Plan and other relevant documents by December

9 or 10, 2004, and was therefore on notice of the 90-day limitation period long before May 5, 2005.

Timeliness

Although the ERISA statute does not set forth a specific statute of limitations, when Congress does not provide a statute of limitations for federal claims, courts generally adopt the most analogous state statute of limitations. Doe, 112 F.3d at 873; Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1137 (7th Cir.1992). In cases where the parties have contracted for a shorter statute of limitations, the Seventh Circuit has allowed the limitation to stand, as long as it is reasonable. Doe, 112 F.3d at 875. In this case, the ESOP includes a 90-day statute of limitations for filing a claim in federal court. The summary plan description clearly sets the limitation: "A claimant has 90 days following the denial of a claim in which to file a lawsuit with respect to the denial. After 90 days a lawsuit may not be filed." (def's 56.1 stmt of facts, ex. 2, at 20). Plaintiff filed this suit 98 days after his May 9, 2005, denial.

Plaintiff does not dispute that the ESOP designates a 90-day statute of limitations, or the dates of denial and filing. Rather, he makes two other arguments. First, plaintiff argues that his denial did not become final until 60 days after his May 9 denial. He relies on the May 9, 2005, denial letter, which states: "If no written request for review is submitted within sixty (60) days after receiving this letter, the decisions set forth in this letter shall be deemed final." (def's 56.1 stmt. of facts, ex. 10, p.3). Therefore, he claims that his federal claim is timely. Such an argument is unavailing because it is an attempted end-run around the exhaustion requirement. If we allowed plaintiff to let the time limit lapse on his administrative appeal and then come straight to federal court, we would undermine the purposes of the exhaustion requirement. Additionally, if we found that the May 9, 2005, denial letter was not a final judgment, plaintiff's complaint would be dismissed for failure to exhaust his administrative

remedies.

Second, plaintiff argues that the 90-day statute of limitations is patently unreasonable. As noted above, the Seventh Circuit has allowed contractual limitations periods in ERISA plans, as long as the shorter limitation is reasonable. In Doe, the court upheld a 39-month statute of limitations, even where the period tolled prior to the end of the internal review process. Because the plaintiff had 17 months to file his claim upon exhaustion of the internal remedies, the court found that the limitations period was reasonable. The court stated: "A suit under ERISA, following as it does upon the completion of an ERISA-required internal appeals process, is the equivalent of a suit to set aside an administrative decision, and ordinarily no more than 30 or 60 days is allowed within which to file such a suit .... Like a suit to challenge an administrative decision, a suit under ERISA is a review proceeding, not an evidentiary proceeding. It is like an appeal, which in the federal courts must be filed within 10, 30 or 60 days of the judgment appealed from ...." Doe, 112 F.3d at 875.

Other courts have also upheld shorter statute of limitations where the court felt that the plaintiff had ample time to develop his case. Northlake Regional Medical Center v. Waffle House System Employee Benefit Plan, 160 F.3d 1301, 1304 (11th Cir.1998) (90-day limitations period reasonable where the record did not indicate that the limitations period was a "subterfuge to prevent lawsuits," plan trustees placed similar time restrictions on their actions, and the limitations period did not begin to toll until after the internal review process was completed); Davidson v. Wal-Mart Associates Health and Welfare Plan, 305 F.Supp.2d 1059 (S.D.Iowa.2004) (45-day contractual limitation was reasonable and enforceable where the Plan was self-funded and contained other limitations designed to timely process claims); In re Amsted Industries, Inc., 211 F.Supp.2d 1067, 1070 (N.D.Ill.2002) (120-day limitations period was reasonable and enforceable); Alcorn v. Raytheon Co., 175 F.Supp.2d 117, 122

(D.Mass.2001) (three-year limitation period was reasonable and enforceable). Similar to the factual situation in <u>Northlake</u> and <u>Davidson</u>, the plaintiff in this case was represented by counsel throughout the process, the ESOP included several limitations to timely process claims, and the communications prior to and during the internal review process lasted eight months. That time, plus 90 days, provided plaintiff adequate time to develop his case. Therefore, we find that plaintiff's complaint was untimely and must be dismissed with prejudice.[4]

## CONCLUSION

For the reasons stated above, we grant defendant's motion for summary judgment, and dismiss plaintiff's complaint with prejudice.

                                                      JAMES B. MORAN
                                       Senior Judge, U. S. District Court

April 19, 2006.

---

[4]The merits of the case are not before us. We do note, however, that pursuant to Sec. 7.6 of the Plan, fair market value is determined as of the last day of the Plan year by the trustee, with the advice of an independent appraiser; we are led to believe that the $162.50 valuation had been determined in accord with that section; that pursuant to Sec. 11.1 of the Plan, for purposes of cash distribution, fair market value is determined under Sec. 7.6, "at the most recent Accounting Date"; that the fair market value at the most recent accounting date in January 2004, was$162.50 per share; and that the Plan's interpretation controls unless it is arbitrary and unreasonable.